**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CF ENTERTAINMENT, INC., a California corporation; ENTERTAINMENT STUDIOS NETWORKS, INC., a California corporation; WEATHER GROUP, LLC, a Delaware limited liability company; and WEATHER GROUP TELEVISION, LLC, a Georgia limited liability company,<br><br>      Plaintiffs,<br> v.<br><br>THE NIELSEN COMPANY (US), LLC, a Delaware limited liability company,<br><br>      Defendant. | Case No. 22-cv-02129<br><br>(Circuit Court of Cook County, Illinois, County Department, Law Division, Civil Action No. 2022-L-002556) |

## NOTICE OF REMOVAL

Defendant The Nielsen Company (US), LLC ("Nielsen") removes this action from the Circuit Court of Cook County, Illinois, Law Division, to the United States District Court for the Northern District of Illinois Eastern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. This Court has jurisdiction over plaintiff's claims under 28 U.S.C. § 1332 because this is a civil action between citizens of different states (excluding the fraudulently joined plaintiffs), the amount in controversy exceeds $75,000, and all other prerequisites for removal have been satisfied. Accordingly, Nielsen hereby removes this case to this Court, and provides the following statement of the grounds for removal:

I.  **Background**

   A.  **The Parties' Citizenship**

   1.  Plaintiff CF Entertainment, Inc. ("CF Entertainment") is a California corporation with its principal place of business in Los Angeles, California. (Ex. A, Compl. ¶ 27, *CF Entertainment, Inc. v. The Nielsen Company (US), LLC*, Case No. 2022L002556, Circuit Court of Cook County, Illinois, Law Division.)

   2.  Plaintiff Entertainment Studios Networks, Inc. ("ESN") is a California corporation with its principal place of business in Los Angeles, California. (*Id.* ¶ 27.) In the Complaint, Plaintiffs refer to CF Entertainment and ESN collectively as "Entertainment Studios." (*Id.* ¶ 28.)

   3.  Plaintiff The Weather Group, LLC is a Delaware limited liability company, whose members, TV Holdings 1, LLC and TV Holdings 2, LLC are both Delaware limited liability companies. (*Id.* ¶ 29.) TV Holdings 1, LLC and TV Holdings 2, LLC, in turn, are wholly owned by non-party Entertainment Studios Media Holdings, Inc., a Delaware corporation with its principal place of business in Los Angeles, California. (*Id.*)

   4.  Plaintiff Weather Group Television, LLC is a Georgia limited liability company that is wholly owned by Weather Group, LLC. (*Id.* ¶ 30.) Weather Group, LLC and Weather Group Television, LLC are referred to collectively as "Weather Group" (and for ease of reference will be referred to in the singular).

   5.  Defendant The Nielsen Company (US), LLC is a Delaware limited liability company headquartered in New York. (*Id.* ¶ 31.) Nielsen is a wholly-owned subsidiary of ACNielsen Corporation, which is its sole member. (*Id.*) ACNielsen is a Delaware corporation with its principal place of business in New York. (*Id.*)

6. When Weather Group's Delaware citizenship is disregarded, as it should be, the parties are completely diverse.

**B.     Ongoing Dispute Between Nielsen and CF Entertainment**

7. This suit is the latest salvo in a continuing battle between Nielsen and CF Entertainment. Nielsen provides comprehensive audience measurement and data analytics to help media companies understand the size and demographics of their audience. For the past 15 years, Nielsen has provided its services to CF Entertainment, a media company owned and controlled by comedian, television producer, media personality, and litigious businessman Byron Allen. When Mr. Allen's businesses acquired Weather Group in 2018, he demanded that Nielsen measure viewership for The Weather Group's television property, The Weather Channel ("TWC"), under CF Entertainment's existing contract with Nielsen. Nielsen disagreed that the parties' existing contract would cover Mr. Allen's new acquisition, and the parties negotiated an amendment to the contract specifically to cover TWC (the "2018 amendment"). The contract and its amendments are attached to this Notice (collectively, the "Nielsen-CF Entertainment Contract"). (*See* Ex. B, Decl. of Alison G. Wheeler, Exs. 1-3).)[1]

8. Apparently dissatisfied with the 2018 amendment's terms, in 2020 Mr. Allen caused CF Entertainment to sue Nielsen in this Court for breach of contract (the "2020 lawsuit"), claiming that an earlier 2017 amendment (Wheeler Decl. Ex. 2) obligated Nielsen to provide

---

[1] While Plaintiffs elected not to attach the Nielsen-CF Entertainment Contract to their current Complaint or to disclose CF Entertainment's earlier lawsuit (discussed *infra*), this Court is entitled to examine them. *See, e.g. Asperger v. Shop Vac Corp.*, 524 F. Supp. 2d 1088, 1095 (S.D. Ill. 2007) (where a plaintiff "has stated a claim but has misstated or omitted discrete facts, the district court may pierce the pleadings and conduct a summary inquiry as to the issue of fraudulent joinder" (cleaned up)); *Peters v. AMR Corp.*, 1995 WL 358843, at *3 (N.D. Ill. June 13, 1995) (in determining the propriety of removal, the court may "consider summary judgment-type evidence such as affidavits").

services for TWC at a much lower monthly price. (*See id.* Ex. 4, Compl., *CF Entertainment, Inc. v. The Nielsen Company (US), LLC*, Case No. 1:20-cv-2393, United States District Court for the Northern District of Illinois, Eastern Division.)

9. Notably, CF Entertainment is the only named plaintiff in the 2020 lawsuit; Weather Group is neither named as a plaintiff (*see id*.) nor mentioned in any pleading filed in that case.

10. The 2020 lawsuit is still pending before this Court. The Court denied CF Entertainment's preliminary injunction motion, holding that CF Entertainment had not shown a "better than negligible" chance of prevailing on its contract claims. (*See id.* Ex. 5 (July 10, 2020 Mem. Op. and Order, at 14.) Nielsen subsequently moved to dismiss the 2020 lawsuit, and its Motion to Dismiss remains pending. (*See id.* Ex. 6, Docket, *CF Entertainment, Inc. v. The Nielsen Company (US), LLC*, Case No. 1:20-cv-2393, United States District Court for the Northern District of Illinois, Eastern Division.)

    **C.**    **Plaintiffs' Current Claims**

11. In the most recent lawsuit, Plaintiffs bring claims against Nielsen for "reformation of contract" and "fraud (intentional misrepresentation/concealment)," both arising from the same Nielsen-CF Entertainment Contract at issue in the 2020 lawsuit. (Ex. A, Compl. ¶¶ 97-116.)

12. First, Plaintiffs phrase their "reformation of contract" claim broadly, requesting "reformation of the parties' written agreements to provide that Plaintiffs are not required to pay the contract rates and, instead, will pay lower rates based on the value of Nielsen's services provided without MRC accreditation." (Compl. ¶ 116.) Plaintiffs fail to mention that this claim concerns an agreement to which only CF Entertainment and Nielsen are parties, and that nowhere even mentions Weather Group. (*See* Wheeler Decl. Exs. 1-3.)

13. Second, Plaintiffs allege that Nielsen committed fraud through various purported misrepresentations and nondisclosures. Once again, none of these alleged actions and omissions describe any interactions between Nielsen and Weather Group; rather, they describe interactions between Nielsen and Entertainment Studios, or generically refer to "Plaintiffs" as a whole.

14. For example, Plaintiffs contend that Nielsen made misrepresentations in 2016-2017 while negotiating the 2017 contract amendment. (Compl. ¶¶ 49, 50, 52.) Nielsen allegedly told Entertainment Studios that its services "would be worthwhile, appropriate, reliable, and a good investment for Entertainment Studios' networks"; and that Entertainment Studios' networks "had attained sufficient distribution and viewership for Nielsen to reliably rate them." (*Id*. ¶ 49-50.) "Shortly thereafter," the Complaint continues, Nielsen issued a press statement that it was providing Entertainment Studios with its "'best-in-class measurement services'" that would provide "'enhanced value to Entertainment Studios during the media buying and selling process.'" (*Id*. ¶ 52.)

15. The Complaint then broadly alleges that after Nielsen began providing ratings reports to Entertainment Studios in 2017 and Entertainment Studios complained Nielsen had failed to capture viewers, Nielsen "dissembled, defending its panel model and boasting that it is the 'gold standard' in the industry." (*Id*. ¶¶ 53, 55.)

16. Plaintiffs admit in their Complaint that Entertainment Studios did not acquire Weather Group until 2018. (*Id*. ¶ 90.)

17. Plaintiffs also contend that Nielsen was silent about or concealed several facts. They allege that when Nielsen claimed it was the "gold standard," it "did not disclose what it already knew – that its ratings services were fundamentally unreliable." (*Id*. ¶ 55.) According to Plaintiffs, Nielsen concealed its internal reviews purportedly showing its services were unreliable

5

"while taking in millions in fees from Entertainment Studios." (*Id*. ¶ 61.) Plaintiffs then allege that Nielsen knew its ratings for TWC had a sample error over 50%, which led to underreporting TWC's viewership, but it concealed those alleged facts "to continue receiving millions of dollars in fees annually to rate The Weather Channel." (Compl. ¶¶ 93-96.) Finally, Plaintiffs claim that "[w]hile under a duty to disclose, Nielsen did not tell and concealed from Plaintiffs that: (1) its ratings service could not reliably rate Plaintiffs' networks; and (2) Nielsen's ratings services would become much more unreliable for all of Plaintiffs' networks including Weather Channel." (Compl. ¶ 107.)

**II.       Removal is Proper Because This Court Has Subject Matter Jurisdiction Pursuant to 28 U.S.C. §§ 1332 and 1441(a)**

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

**A.      Complete Diversity of Citizenship Exists Because Plaintiff Weather Group is Fraudulently Joined**

19.     Plaintiff Weather Group was fraudulently joined in this suit for the sole purpose of defeating federal jurisdiction, and its Delaware citizenship should not be considered when evaluating diversity jurisdiction. When Weather Group's citizenship is disregarded, the requirements of 28 U.S.C. §§ 1332 and 1441(a) are satisfied.

20.     Joinder of a nondiverse party solely to deprive a court of diversity jurisdiction will not prevent removal. *Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994). Courts evaluating whether a party was fraudulently joined analyze whether there is: (1) "no possibility that a plaintiff can state a cause of action against a nondiverse defendant in state court"; or (2) "whether there has been outright fraud in the plaintiff's jurisdictional allegations." *Id*.

21. Here, there is no possibility that Weather Group can make colorable claims against Nielsen for contract reformation or "fraud (intentional misrepresentation/concealment)." Both claims fail for the same fundamental and indisputable reason: Plaintiffs' own allegations, and the contracts incorporated by reference in the Complaint, make clear that Weather Group was not and is not a party to the contracts at issue. Because Nielsen contracted with CF Entertainment and not Weather Group, Plaintiffs do not (and cannot) allege that Nielsen made any misrepresentation to Weather Group, that Nielsen had any duty to speak to Weather Group in connection with any alleged omission, that Weather Group heard any alleged misrepresentation, that Nielsen intended to induce Weather Group to act in reliance on any alleged misrepresentation or concealment, that Weather Group did in fact so rely, or that Weather Group sustained any resulting damages. In sum, Plaintiffs' attempts to add claims by Weather Group are facially frivolous and were added solely to defeat diversity.

    1)    <u>Weather Group has no colorable claim for reformation of contract.</u>

22. Plaintiffs seek reformation of "[t]he agreement between Plaintiffs and Nielsen" (Compl. ¶ 114), and request "reformation of the parties' written agreements to provide that Plaintiffs are not required to pay the contract rates" but instead will pay lower rates based on the alleged reduced value of Nielsen's services. (Compl. ¶¶ 114, 116.)

23. This general group pleading fails to establish a plausible claim by Weather Group, because the contract at issue is between Nielsen and CF Entertainment only. (*See* Wheeler Decl. Exs. 1-3.) Weather Group fails to allege (because it cannot) that it is a party to this or any other contract with Nielsen. And as a matter of law, Weather Group cannot argue that it is permitted to sue on the Nielsen-CF Entertainment Contract as an entity in privity with Entertainment Studios, or as a third-party beneficiary to the 2018 agreement.

24. With respect to privity, Plaintiffs fail to allege any legal relationship whatsoever between Weather Group and CF Entertainment, much less a relationship of privity. The Complaint does allege that Weather Group, LLC's members (TV Holdings 1, LLC and TV Holdings 2, LLC) are owned by "Entertainment Studios Media Holdings, Inc." (Compl. ¶ 29), but that entity is neither a named plaintiff nor a party to the contract at issue.

25. Further, Weather Group is not a third-party beneficiary to Nielsen's agreement with CF Entertainment to provide ratings for TWC, since the Nielsen-CF Entertainment Contract's 2018 amendment merely states that Nielsen will measure The Weather Channel and does not identify Weather Group by name or class.

    2)    <u>Weather Group has no colorable claim for intentional misrepresentation or concealment.</u>

26. To make a claim for intentional misrepresentation under Illinois law, Weather Group must allege that Nielsen made a representation that was: (1) a false statement of material fact; (2) known or believed by Nielsen to be false at the time Nielsen made it; (3) intended to induce Weather Group to act; (4) acted upon by Weather Group in reliance upon the truth of the representations; and (5) damaging to Weather Group as a result. *See Hoopingarner v. Stenzel*, 329 Ill. App. 3d 271, 278, 768 N.E.2d 772, 778 (2002). A claim for fraudulent concealment includes many of the same elements, requiring Weather Group to allege that Nielsen (1) concealed a material fact; (2) with the intent to induce a false belief where there exists a duty to speak; (3) that Weather Group could not have discovered the truth through reasonable inquiry and relied upon the silence as an indication that the concealed fact did not exist; (4) that Weather Group would have acted differently had it known of the concealed information; and (5) that Weather Group's reliance resulted in its injury. *See Vandenberg v. Brunswick Corp.*, 2017 IL App (1st) 170181, ¶¶ 31-32, 90 N.E.3d 1048, 1056; *see also, e.g., Christensen v. Boeing Co.*, No.

8

20 C 1813, 2021 WL 83548, at *2–3 (N.D. Ill. Jan. 11, 2021) (fraudulent omission and misrepresentation claims have the same required elements, with omission claims also requiring a duty to speak).

27. Because Nielsen never contracted with Weather Group, the Complaint's allegations lack several necessary components of a claim by Weather Group for intentional misrepresentation or concealment. Plaintiffs do not (and cannot) allege that Nielsen made any representations to Weather Group, that Nielsen had any duty to speak to Weather Group in connection with any alleged omission, that Weather Group ever heard any alleged misrepresentations (which were all made to Entertainment Studios), that Nielsen intended its misrepresentations or omissions to induce Weather Group to act, that Weather Group acted in reliance upon any alleged misrepresentations or omissions, or that Weather Group was damaged as a result.

28. In addition, with respect to Plaintiffs' concealment allegations, they also concern Nielsen's purported deceptive conduct toward Entertainment Studios, not Weather Group. The only concealment allegation that even arguably implicates Weather Group is a vague claim that "[w]hile under a duty to disclose, Nielsen did not tell and concealed from Plaintiffs that: (1) its ratings service could not reliably rate Plaintiffs' networks; and (2) Nielsen's ratings services would become much more unreliable for all of Plaintiffs' networks including Weather Channel." (Compl. ¶ 107.) But such generic allegations are insufficient as a matter of law to plead a fraudulent concealment claim.

29. Nor can Weather Group argue as a proxy for actual reliance that it was a third-party beneficiary of the Nielsen-CF Entertainment Contract. Again, Weather Group cannot establish that it is a third-party beneficiary of that contract because Weather Group is nowhere

9

even mentioned in the Nielsen-CF Entertainment Contract (including its 2018 amendment adding services to measure TWC) (*see supra* ¶¶ 23-25), and even if it were, as a matter of law that would not suffice to claim reliance on statements to CF Entertainment.

30. Plaintiffs' allegations regarding reliance are also deficient because they have not asserted that Weather Group (as opposed to Entertainment Studios) took any action whatsoever as a result of the alleged misstatements or omissions. According to the Complaint, the alleged misrepresentations and omissions led to the execution of only one contract—the Nielsen-CF Entertainment contract. And while the Complaint carefully avoids discussing the 2018 amendment under which Nielsen provided measurement services for The Weather Channel, that amendment, too, was with Entertainment Studios alone, and not Weather Group. (*See* Wheeler Decl. Ex. 3.)

### B. The Amount-In-Controversy Requirement Is Satisfied

31. While the Complaint does not specify a precise amount of damages sought, Plaintiffs allege that, as a result of Nielsen's alleged statements and omissions, they suffered damages that "include millions of dollars in fees paid to Nielsen for shoddy and unreliably [sic] services, millions of dollars in lost advertising revenue and profits, lost business value and other consequential harms that are estimated to be in the billions of dollars." (Compl. ¶ 111.)

32. Nielsen denies any liability for Plaintiffs' alleged injuries, but the Complaint establishes that "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a).

### C. Nielsen Has Met All Other Procedural Requirements for Removal

33. Nielsen timely filed its Notice of Removal. Plaintiffs filed this action on March 16, 2022, and Nielsen accepted service on March 28, 2022. Where the complaint is filed in court before it is served, the 30-day period for removal provided by 28 U.S.C. § 1446(b)(1) runs from

service of the summons. *Dultra v. US Med. Home, Inc*., No. 13 C 07598, 2014 WL 1347107, at *3 (N.D. Ill. Apr. 4, 2014), citing *Murphy Brothers v. Michetti Pipe Stringing*, 526 U.S. 344, 347 (1999). Since Nielsen filed this Notice of Removal on April 25, 2022, within 30 days after service, the notice is timely.

34. The Circuit Court of Cook County is located within the Northern District of Illinois. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

35. Nielsen, the removing defendant, is the only defendant in the action. Therefore, all properly served defendants consent to this Notice of Removal.

36. Promptly after filing this Notice of Removal, Nielsen will provide written notice of it to Plaintiffs and will file with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Law Division, the Notice of Filing of Notice of Removal attached here as Ex. C. See 28 U.S.C. §§ 1446(a), (d).

## CONCLUSION

WHEREFORE, Nielsen respectfully removes this action from the Circuit Court of Cook County, Illinois, to the United States District Court of the Northern District of Illinois Eastern Division.

Dated: April 25, 2022

Respectfully submitted,

*/s/ Adam L. Hoeflich*
Adam L. Hoeflich (IL Bar # 6209163)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
adam.hoeflich@bartlitbeck.com

Jason C. Murray (*Pro Hac Vice* pending)
Alison G. Wheeler (*Pro Hac Vice* pending)

BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100
jason.murray@bartlitbeck.com
alison.wheeler@bartlitbeck.com

*Counsel for Defendant*